

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8087 | **DATE** | 2/26/2004 |
| **CASE TITLE** | Lawrence Jackson vs. Eugene McAdory | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. Any pending motions are denied as moot. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | FEB 2 7 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | JxM | 20 |
| X | Mail AO 450 form. Mailed by MD. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/26/2004 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

United States of America ex rel.   )
LAWRENCE JACKSON, (#N-10765),  )
                                   )
           Petitioner,    )
                                   )
         v.               )
                                   )
EUGENE McADORY,[1] Warden,   )
Menard Correctional Center,     )
                                   )
         Respondent.    )

Case No. 02 C 8087

Hon. Joan Humphrey Lefkow

## MEMORANDUM OPINION AND ORDER

On June 23, 1988, following a jury trial in the Circuit Court of Cook County, habeas

petitioner Lawrence Jackson was convicted of four counts of murder, one count of attempted

murder, five counts of home invasion and armed robbery, and various related charges, in

connection with the murders of three adults and one child in a Chicago housing project. Jackson

was sentenced to death. He filed a placeholder petition for a writ of habeas corpus with this court

on December 20, 2002. On January 11, 2003, former Illinois Governor George Ryan commuted

Jackson's sentence to natural life imprisonment. Following the commutation, Jackson filed his

amended petition with this court on April 11, 2003. The court denies Jackson's habeas petition

in its entirety.

---

[1] The petitioner is currently incarcerated at Menard Correctional Center. Because Eugene McAdory is the warden at Menard, he is the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, this court substitutes McAdory as the respondent. *See* Fed. R. Civ. P. 25(d)(1).



# I. BACKGROUND

## A. PROCEDURAL HISTORY

On June 23, 1988, a Cook County jury convicted Jackson of four counts of murder and multiple related charges.[2] The jury concluded that Jackson was eligible for death, and found no mitigating factors sufficient to preclude imposition of the death penalty. Jackson appealed the verdict and sentence directly to the Illinois Supreme Court. *See People v. Jackson*, 145 Ill.2d 43 (Ill. 1991) ("*Jackson I*"). Following the Illinois Supreme Court's affirmance of the trial court decision, Jackson petitioned the U.S. Supreme Court for a writ of *certiorari*. The Supreme Court granted the writ, and remanded for resentencing in light of *Morgan v. Illinois*, 504 U.S. 719 (1992).

In accordance with the remand, Jackson received a second sentencing hearing with a new jury and was once again sentenced to death. On direct appeal from this new death sentence, the Illinois Supreme Court affirmed the decision of the Cook County Circuit Court. *See People v. Jackson*, 182 Ill.2d 30 (Ill. 1998) ("*Jackson II*"). Jackson then filed a petition for post-conviction relief with the circuit court, which was denied. The Illinois Supreme Court affirmed the denial of Jackson's request for post-conviction relief, and denied his request for rehearing. *See People v. Jackson*, 205 Ill.2d 247 (Ill. 2001), *rehearing denied* April 1, 2002 ("*Jackson III*").

Jackson filed his placeholder petition for a writ of habeas corpus on December 20, 2002, followed by his amended petition and memorandum in law in support thereof on April 11, 2003. Because this is Jackson's first habeas petition and he filed it within one year after the conclusion of his post-conviction proceedings in the Illinois state courts, this court has jurisdiction to

---

[2] The Cook County Circuit Court, Joseph Urso, J., assigned case number 86-CR-14456 to the proceedings.

consider it. *See* 28 U.S.C. § 2244(b), (d)(1), & (d)(2); *Gray v. Briley*, 305 F.3d 777, 778-79 (7th Cir. 2002).

Jackson does not challenge the facts as set forth by the Illinois Supreme Court in its opinions affirming the judgments of the trial court and the resentencing court. This court, therefore, presumes that these facts are correct for purposes of collateral review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003) (habeas petitioner can rebut presumption with clear and convincing evidence). Thus, the court adopts the facts as set forth by the Illinois Supreme Court in Jackson's direct and post-conviction appeals. *See Jackson I*, 145 Ill.2d at 56-66; *Jackson II*, 182 Ill.2d at 37-42; *Jackson III*, 205 Ill.2d at 254-56.

## B.    TRIAL EVIDENCE

Jackson was charged with the murders of Mark Brown, Vernita Winder, Shirley Martin and Dana Winder, as well as the attempted murder of Urica Winder and several related counts of armed robbery and home invasion. On the evening of September 24, 1986, six-year-old Urica Winder allowed Jackson and Bobbie Driskel to enter the West Side Chicago apartment that she shared with her mother Vernita; her two sisters, Dana and Shanita; her mother's boyfriend, Mark Brown; and her mother's friend, Shirley Martin. Urica had previously met the two men at a party for a family friend.

Jackson and Driskel fatally stabbed Mark, Shirley, Vernita and Dana. Urica was stabbed several times and ultimately survived the attack only by playing dead. Urica's infant sister Shanita was unharmed. The two men searched the apartment for money and finally left with a television set and VCR. The next day, Urica's cousin Tamico discovered that Urica was badly

injured and that the four others were dead. Tamico sought help, and shortly thereafter Urica was taken to the hospital for medical assistance. When Urica later spoke with the police, she was able to identify Jackson and Driskel from a group of photographs that officers showed her.

On September 25, 1986, after learning that the authorities were looking for him, Jackson turned himself in to the Chicago police department. After advising him of his *Miranda* rights, Detective Steve Peterson and several other detectives questioned Jackson about his involvement in a quadruple homicide. Jackson stated he knew nothing about it, claiming that he had been at home all night the previous evening. Following his interview with the detectives, Jackson was questioned by Cook County Assistant State's Attorney Michael O'Donnell, who also advised Jackson of his *Miranda* rights, and asked if he needed medical attention for some cuts O'Donnell noticed on his arm. When O'Donnell asked Jackson what he had been doing the prior evening, Jackson again said he had been at home smoking cocaine, and that the injury on his arm occurred when his cocaine pipe exploded. O'Donnell questioned the credibility of this story, and suggested that Jackson "think about" what he was saying. At that point, Jackson acknowledged his involvement in the events, and proceeded to share the following information with O'Donnell. The contents of the conversation were memorialized in written and oral form.

Jackson explained that he and Driskel had been smoking cocaine at Jackson's apartment on September 24, 1986. When they ran out of drugs and money, they decided to kill Driskel's cousin, Mark Brown, and take his money, television, and VCR. They asked Jackson's uncle, O.C. Roland, to drive them to Brown's apartment. Jackson and Driskel developed their plan of action during the car ride, speaking softly so that Roland would not hear them. When they reached the apartment, Urica let them in to speak with Brown. They proceeded to stab Brown,

4

then Vernita Winder and her daughters Dana and Urica, and finally Shirley Martin. The men left

the apartment with a television and VCR. They took the items to the home of Philip Simms,

Brown's employer and Driskel's former employer. Simms purchased the items.

At trial, Jackson presented a voluntary intoxication defense, due to his use of cocaine,

PCP and heroin throughout the day and evening of the murders. The statements he gave to

O'Donnell were admitted into evidence. He also called several witnesses to testify on his behalf.

Roland offered testimony about the course of the evening's events. Dr. Marvin Ziporyn, a

psychiatrist, testified regarding the effects of the various drugs on Jackson and Jackson's likely

mental state at the time of the murders. Dr. James O'Donnell, a doctor of pharmacology,

testified about the physiological effects of cocaine, heroin and PCP. Dr. Robert Reifman, the

State's expert psychiatric witness, gave testimony about the possibility of voluntary intoxication

as a legal defense.

## II.    LEGAL STANDARDS

### A.    HABEAS STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court may

grant Jackson's request for habeas relief with respect to any claim decided on the merits by the

state court only if the court's decision "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States."

*See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). A state court's

decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at

a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the

state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405.

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *See id.* at 410 ("An *unreasonable* application of federal law is different from an *incorrect* application ...) (*emphasis in original*); *see also Yarborough v. Gentry*, 124 S.Ct. 1, 4 (2003) (same). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004) ("question before a federal court on collateral review ... is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'").

### B. PROCEDURAL DEFAULT

Before this court can reach the merits of Jackson's habeas claims, Jackson must comply with two procedural requirements: exhaustion of remedies and procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). State remedies are exhausted if they are fully and fairly presented to the state's highest court for a ruling on the merits or when no means of

pursuing review remain available. *See id.* at 844-48 (citing 28 U.S.C. § 2254(c)); *see also Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001).

Procedural default occurs when a habeas petitioner fails to present a constitutional claim to the highest state court to which it may be appealed in the manner required by state law. *See Boerckel,* 526 U.S. at 845; *see also Engle v. Isaac,* 456 U.S. 107, 129 (1982) (state appellate courts must have chance to mend their own fences and avoid federal intrusion). A habeas claim may also be procedurally defaulted if the state court rests its judgment on an adequate and independent finding of procedural default under state law. *See Stewart v. Smith,* 536 U.S. 856, 860 (2002). Under Illinois law, waiver of a claim by failing to raise it at the appropriate point during trial or the appellate process is an independent and adequate state ground. *See Whitehead v. Cowan,* 263 F.3d 708, 726-27 (7th Cir. 2001).

Last, a federal court may not grant habeas relief on a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Anderson v. Cowan,* 227 F.3d 893, 899-90 (7th Cir. 2000).

## III.   MOOT SENTENCING CLAIMS

On January 11, 2003, former Illinois Governor George Ryan commuted Jackson's death sentence to natural life in prison without the possibility of parole. There are no challenges pending in any court related to this commutation. Since the commutation, the Illinois Supreme Court has issued modified decisions on the denial of rehearing in other death penalty cases. In these cases, the Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendant's death sentence rendered moot all capital sentencing claims. *See e.g., People v.*

*Lucas*, 203 Ill.2d 410 (2003) (commutation removes judicially imposed sentence replacing it with executively imposed sentence); *People v. Miller*, 203 Ill.2d 433 (2003) (same). The court also recently rejected challenges to certain commutations, finding that a governor's clemency power is "essentially unreviewable." *See Madigan v. Snyder*, 2004 WL 116116, *11 (Ill. 2004).[3] Also, in a denial of an application for a certificate of appealability pursuant to 28 U.S.C. § 2253(c), the United States Court of Appeals for the Seventh Circuit concluded that due to the commutation of a petitioner's death sentence, the petitioner's habeas claims based on that sentence were now moot. *See Wilson v. Mote*, No. 03-1943, slip op. at 1 (7th Cir. June 18, 2003). Thus, any challenge that Jackson brings against his death sentence is moot.

Although Jackson's amended habeas petition was filed after the commutation of his death sentence, he nevertheless includes a death penalty claim in the amended habeas petition. Contrary to Jackson's assertion that this claim is still valid, this court concludes that the claim is moot. Therefore, Jackson's claim of due process and equal protection violations due to the State's improper use of peremptory challenges to exclude prospective jurors on the basis of being "weak" on the death penalty (Claim #1) is now moot.[4]

---

[3] *Madigan v. Snyder* dealt with challenges to the commutations of prisoners who either (1) had not signed the clemency petitions, or (2) had already had their death sentences reversed at the time of the commutations. *See* 2004 WL 116116, * 1. Jackson was not in either of these groups.

[4] Jackson also raised ineffective assistance of trial and appellate counsel claims related to Claim # 1. Since these claims also involve challenges to his death penalty sentence, they are now moot.

## IV. JACKSON'S NON-CAPITAL HABEAS CLAIMS

### A. PROSECUTORIAL MISCONDUCT (Claim # 2)

Next, Jackson claims that the State engaged in a pattern of misconduct at trial that violated his due process and equal protection rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, thereby denying him his rights to present a defense and enjoy a fair trial. He also suggests that his right to confront witnesses was violated, but has not described that aspect of this claim. Jackson presented the prosecutorial misconduct claim to the Illinois Supreme Court; therefore, this court may review the merits. *See Jackson I*, 145 Ill.2d at 54-55. In his habeas petition, Jackson cites four instances of alleged misconduct by the State: (1) Driskel's statement that the use of drugs had a sobering effect on him; (2) Dr. Ziporyn's alleged statement that the voluntary intoxication defense was a weak one; (3) Jackson's statement to Roland reflecting memory of the details of the crimes; and (4) Dr. Reifman's opinion about the voluntary intoxication defense.[5]

Defendants are entitled to fair trials, not perfect ones. *See Lutwak v. U.S.*, 344 U.S. 604, 619 (1953). Jackson's prosecutorial misconduct claim mainly involves allegations of discovery violations by the State.[6] This court notes that "there is no general constitutional right to discovery in a criminal case," *see Gray v. Netherland*, 518 U.S. 152, 167-68 (1996); thus, discovery violations, standing alone, do not generally amount to cognizable federal habeas claims.

---

[5] Jackson also briefly argues that appellate counsel was ineffective for not raising the prosecutorial misconduct issues on appeal; however, these issues were raised on direct appeal and considered by the Illinois Supreme Court. *See Jackson I*, 145 Ill.2d at 54-55. Thus, this claim is without merit.

[6] The record does not contain Jackson's discovery requests and it is not completely clear what information was actually requested of the State; thus, this court is not certain whether the State complied with Jackson's discovery requests or not.

However, prosecutorial misconduct may be a basis for federal habeas relief if the petitioner can demonstrate that he did not receive a fair trial. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

In evaluating such claims, "the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citation and quotations omitted). A reviewing court may consider several factors to determine whether a petitioner received a fair trial. *Swofford v. Dobucki*, 137 F.3d 442 (7th Cir. 1998), lists factors for a reviewing court to consider to ascertain whether a petitioner received a fair trial. These factors, intended to be relevant guidelines and not the only matters to review, include (1) whether the prosecutor misstated or manipulated the evidence; (2) whether the comments implicated other specific rights of the accused ... ; (3) whether the comments were invited by or responsive to defense counsel's summation; (4) whether the trial court's instructions ameliorated the harm; (5) whether the evidence weighed heavily against the defendant; and (6) whether the defendant had an opportunity to rebut the prosecutor's comments. *Swofford*, 137 F.3d at 444-45 (*citing Darden*, 477 U.S. at 181-82). In *Swofford*, the allegedly improper comments did not render the trial unfair, in light of the evidence presented against defendant. *Id.* at 455; *see also Rodriguez v. Scillia*, 193 F.3d 913, 920 (7th Cir. 1999) (petitioner was not unfairly prejudiced, due to totality of evidence presented).

Even if a prosecutor's misconduct results in trial error, the error is often harmless. *See United States v. Hasting*, 461 U.S. 499, 508-09 (1983). In *Hasting*, the Supreme Court set forth the standard for reviewing allegations of trial error, stating

10

[T]he Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. (*internal citations omitted*). The goal ... is to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.

461 U.S. at 509. According to current precedent, unless a trial error has a "substantial or injurious effect or influence"on the verdict, that error does not warrant a federal court's grant of habeas relief.[7] *See Brecht v. Abramson*, 507 U.S. 619, 623 (internal citation omitted). With these standards in mind, the court now turns to the specific allegations of prosecutorial misconduct raised by Jackson.

### 1.  State's Failure to Tender Statement Given by Driskel to Dr. O'Donnell

Jackson contends that the State improperly withheld a statement given by Driskel to Dr. James O'Donnell, Jackson's expert pharmacology witness, regarding the effect that the events of the night of the murders had on Driskel. *See Jackson I*, at 92-93. His contention is that the State improperly withheld this statement to damage Jackson's voluntary intoxication defense. At trial, one of the prosecutors asked Dr. O'Donnell whether an exciting event could have a sobering effect on someone under the influence of cocaine. Jackson's counsel objected to this line of questioning; however, over objection, O'Donnell was permitted to answer, and responded that Driskel had told him that the incidents on the night of the murders had that type of effect on him. *See id*. at 93. It appears that the judge struck this answer from the record; however, it is not

---

[7] This standard does not apply to structural defects; however, Jackson's claims of trial error in this case do not constitute structural defects. *See Arizona v. Fulminante*, 499 U.S. 279, 309 (1991) (limited class of fundamental errors that "defy analysis by harmless error standards" and require automatic reversal.)

completely clear whether the jury would have understood the court's ruling because, according to the transcript, it appears that the judge struck the objection, not the testimony.

In his brief submitted to the *Jackson I* court, Jackson alleged that this statement by O'Donnell violated the rule set forth in *Bruton v. United States*, 391 U.S. 123 (1968), which protects a defendant's right to confront witnesses. Jackson has not mentioned *Bruton* in his habeas corpus petition; however, *Bruton* stands for the proposition that a co-defendant's confession may not be admitted against a defendant unless subject to testing through cross-examination. *See Bruton*, 391 U.S. at 125-26.

Jackson has cited no Supreme Court precedent, nor has this court located any relevant precedent, which has extended *Bruton* to the type of testimony at issue in Jackson's case. Driskel's statement, reported by Dr. O'Donnell, was not a confession and did not implicate Jackson directly or, arguably, even indirectly. Driskel spoke of his state of mind, not of Jackson's. *See Jackson I*, 145 Ill.2d at 93. In reviewing the Illinois Supreme Court's decision on this issue, this court must respect that judgment unless it is objectively unreasonable, falling "well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762.

This court cannot say that the *Jackson I* court's conclusion that the jury would not assume that Driskel's statement of his state of mind should also be attributed to Jackson is objectively unreasonable. Even if this evidence should not have been presented, any error was harmless, as it did not likely have a substantial effect on the verdict. *See Brecht*, 507 U.S. at 623; *see also Schneble v. Florida*, 405 U.S. 427, 430 (1972) (*Bruton* questions subject to harmless error

analysis).  Thus, this request for habeas relief is denied.  *See Henderson*, 354 F.3d at 909 (state

court decision must be "far out-of-bounds" to be considered unreasonable).

### 2.  State's Failure to Tender Statement Given by Dr. Ziporyn to Prosecution

Next, Jackson asserts that the State denied him a fair trial, by not providing him with

evidence of a statement made by Dr. Ziporyn, Jackson's expert psychiatric witness.  In this

statement, Dr. Ziporyn allegedly told one of the prosecutors that he "didn't think much" of

Jackson's voluntary intoxication defense.[8]  During the trial, one of the prosecutors asked Dr.

Ziporyn whether he had in fact made that remark to the State.  *See Jackson I*, 145 Ill.2d at 70.

Jackson immediately objected to this questioning, and the question was never answered.  The

State withdrew the question, and the court immediately admonished the jury to disregard it.[9]

Jackson's contention is that the State's posing of this question to Ziporyn destroyed his

voluntary intoxication defense, and deprived him of his right to a fair trial under the due process

clause, as set forth in *Darden*, 477 U.S. 168.

On direct appeal, the Illinois Supreme Court concluded that, although surprise may have

been used improperly by the State, any error in the State asking Dr. Ziporyn this question was

harmless.  *See Jackson I*, 145 Ill.2d at 95.  The jury heard substantial evidence of Jackson's

mental state before and during the murders in the form of Jackson's own detailed statements to

---

[8]  The analysis of the alleged withholding of evidence in all components of Claim # 2 would be quite different if the evidence in dispute were exculpatory or impeachment evidence.  The State has a clear obligation to disclose evidence that is potentially favorable to a defendant, such as exculpatory and impeachment evidence.  *See e.g. Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. U.S.*, 405 U.S. 150 (1972); *U.S. v. Agurs*, 427 U.S. 97 (1976).

[9]  This court notes that there is some dispute as to whether the State truly failed to give this information to Jackson.  Some of the prosecutors claimed that they had in fact shared this statement with at least one of Jackson's attorneys.  For purposes of Jackson's argument, the court will assume that the State did not share this statement with him.

the police and to an assistant state's attorney. *See id.* at 94. Jackson contends that this was an unreasonable decision, since the State neglected its duty to provide information to Jackson, and this resulted in unfair surprise at trial.

For Jackson to receive habeas relief, he must show that the state court's decision was an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254 (d)(1); *Williams*, 529 U.S. at 404-05. The Illinois Supreme Court's decision was not unreasonable. A reviewing court may analyze a number of factors to decide whether petitioner received a fair trial, including any corrective instruction by the trial court and the weight of the evidence against the petitioner. *See Darden*, 477 U.S. at 181-83; *Swofford*, 137 F.3d at 444-45. In this case, the question posed to Ziporyn was never answered, the question was withdrawn, and the judge immediately gave a thorough corrective instruction, admonishing the jury to disregard the prosecutor's question. *See Jackson I*, 145 Ill.2d at 69-71. The State had already presented evidence relevant to Jackson's state of mind. *See id.* at 61-64. Under *Darden* and its progeny, these are all factors that a court may review to determine whether a petitioner received a fair trial. *See Swofford*, 137 F.3d at 444-45.

The jury was presented with evidence of Jackson's own oral and written statements reflecting his mental state prior to and during the homicides. He described the night's events in great detail. Given that the jury already had this information before it, Jackson was unlikely further prejudiced by the question posed to Dr. Ziporyn. The Illinois Supreme Court reasonably reviewed the record as a whole, and determined that, in light of the strong evidence of Jackson's mental state, any possible error in the State asking this question of Ziporyn was harmless. *See Jackson I*, 145 Ill.2d at 94-95. This is neither contrary to nor an unreasonable application of

14

relevant Supreme Court precedent. *See e.g. Brecht*, 507 U.S. at 623 (error is harmless unless it has "substantial and injurious effect or influence" on the verdict). Therefore, this court denies Jackson's request for habeas relief with respect to this allegation of prosecutorial misconduct. *See Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003) (state court decision must be at least "minimally consistent" with case's particular circumstances) (internal citations omitted).

### 3. State's Failure to Tender Statement Given by Roland to Prosecution

Third, Jackson argues that the State improperly withheld a statement he had made to Roland, in which he admitted stabbing people in the apartment. He claims that this also violates his right to a fair trial. The State used this statement in cross-examining Roland, ostensibly to weaken Jackson's voluntary intoxication defense. This conversation between Roland and Jackson served as further evidence of Jackson's mental state on the night of the murders.

During cross-examination, one of the prosecutors questioned Roland about the events during the evening of September 24. Roland testified that he observed Jackson walking down the stairs from the apartment where the murders took place, and he seemed to have no difficulty walking with a large television. *See Jackson I*, 145 Ill.2d at 66. Roland further testified that Jackson did not demonstrate any difficulty speaking and that he never indicated to Roland that he could not remember where he had been or what he done that evening. *See id*. Finally, Roland testified that, in a telephone call after the murders, Jackson told him that he had stabbed the victims. *See id*. Jackson objected, claiming not to have had knowledge of the State's intention to present the details of this phone call. The prosecutor claimed he had just learned of this statement while speaking with Roland earlier that day before cross-examination. The Illinois Supreme Court found that, if there was any error committed, it was harmless. *See id*. at 95.

15

Jackson's contention is that, had he known of this statement, he would have prepared much differently, and possibly chosen not to call Roland as a witness. He maintains that it is impossible to calculate the effect that this statement had on the jury, and that it was unreasonable for the Illinois Supreme Court to treat this claim, along with related prosecutorial misconduct claims, in summary fashion and relegate them to the harmless error 'wastebasket.' The *Jackson I* court found that this statement "could hardly have been revelation[s] to the jury." *Id.* at 95. Jackson had already given very detailed statements to the authorities the day after the crimes, and this, coupled with the non-objectionable testimony from Roland and evidence from another expert, made Roland's arguably improperly-admitted statement "a trivial piece of evidence" in comparison. *Id.*

In order to prevail on this habeas claim, Jackson would need to show that the Illinois Supreme Court's decision on this matter was either contrary to or an unreasonable application of relevant Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1) & (d)(2). The court's treatment of this exchange as harmless error was not unreasonable. *See Hasting*, 461 U.S. at 508. In light of Jackson's oral and written statements given to the authorities the day of his arrest, as well as other evidence introduced at trial, it is unlikely that the statement given by Roland had a substantial or injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 637-38. The Supreme Court has also found that the admission of a witness' testimony may be harmless if the testimony is cumulative of other testimony already presented and is corroborated by other evidence on material points. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (internal citation omitted). Roland's testimony was cumulative of the admission of Jackson's own

statements, and was largely corroborated by those statements; thus, its presence at trial, even if improper, constituted harmless error. *See id.*

Once again, under the AEDPA, this court may only grant habeas relief if the state court's decision was objectively unreasonable. *See Williams,* 529 U.S. at 410. Considering the state of the evidence against Jackson, the *Jackson I* court reasonably decided that the prosecution's use of Roland's statement was harmless error. *See Jackson I,* 145 Ill.2d at 94-95. Because the Illinois Supreme Court's application of relevant Supreme Court precedent was not objectively unreasonable, Jackson's request for habeas relief is denied. *See Mitchell v. Esparza,* 124 S.Ct. 7, 12 (2003) ("habeas relief is appropriate only if [the state court] applied harmless-error review in an 'objectively unreasonable' manner"), *citing Lockyer v. Andrade,* 538 U.S. 63, 75-77 (2003); *see also Jackson v. Frank,* 348 F.3d 658, 662 (7th Cir. 2003) ("unreasonable means something like lying well outside the boundaries of permissible differences of opinion"), *citing Hardaway,* 302 F.3d at 762.

### 4.   Dr. Reifman's and Prosecutor's Misleading of Jury by Incorrectly Stating Voluntary Intoxication Defense

Finally, Jackson contends that Dr. Reifman, the State's expert psychiatric witness, and then the prosecutor, misled the jury by incorrectly explaining the voluntary intoxication defense. Dr. Reifman explained that he was just giving his opinion. This is similar to opinion testimony expressed by Dr. Ziporyn, Jackson's own expert. Both Jackson and the State were entitled to call expert psychiatric witnesses, and the jury was free to determine the credibility of these witnesses.

When presented with this claim, the Illinois Supreme Court concluded that, prior to deliberation, the jury was provided with the correct instructions on the operation of the voluntary intoxication defense; therefore, no error occurred. *See Jackson I*, 145 Ill.2d at 91. In his brief submitted to the *Jackson I* court, Jackson agreed that the jury was instructed correctly. Even if the jury may have been somewhat confused by Reifman's testimony, this does not mean that Jackson was denied a fair trial. Jury confusion, by itself, may justify the granting of habeas relief, but only if that confusion "resulted in a verdict that no rational trier of fact could have reached on the basis of the evidence presented." *DiGiacomo v. Franzen*, 680 F.2d 515, 519 (7th Cir. 1982), *citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court cannot say that jury confusion in Jackson's case, if any, resulted in a verdict that no rational trier of fact could have reached.

In this case, the Illinois Supreme Court reasonably determined that, if any error was committed with respect to Reifman and the prosecutor's testimony, it was harmless. *See Jackson I*, 145 Ill.2d at 91. As stated previously, the jury already had evidence of Jackson's own statements as well as testimony from Roland demonstrating Jackson's mental state on the night of the crimes. Jackson has not shown that the court's decision violated *Darden* or other relevant fair trial precedent. Given the other evidence available to the jury, this court finds, as required by AEDPA, that the Illinois Supreme Court's decision was at least "minimally consistent" with the facts of the case, and at least "one of several equally plausible outcomes." *See Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003). Therefore, this court denies the requested habeas relief based on the alleged error enumerated in this allegation of prosecutorial misconduct. Jackson's request for habeas relief as to all allegations in Claim # 2 is denied.

18

**B.     INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (Claim # 3)**

Jackson's third claim is that trial counsel was ineffective for not thoroughly conducting discovery and preparing witnesses.[10] He contends that, had trial counsel prepared more fully, the result of the trial would have been different. Jackson raised this claim in a petition for post-conviction review submitted to the Cook County Circuit Court; however, he did not include this claim in his appeal to the Illinois Supreme Court following the dismissal of that petition. He had appealed most of the claims he raised in the petition for post-conviction relief, but for reasons beyond this court's knowledge, he included neither this claim nor Claim # 4 (ineffective assistance of appellate counsel, described below) in that appeal.

As stated in Part II.B, *supra*, before a federal habeas court may reach the merits of a petitioner's claims, it must determine whether the petitioner exhausted all available state remedies. *See Boerckel* 526 U.S. at 843; *see also Rodriguez*, 193 F.3d at 916. In this case, Jackson did not exhaust his state remedies, since he did not invoke one complete round of Illinois' established appellate process with respect to this claim. *See Boerckel*, 526 U.S. at 845; *Mahaffey v. Schomig*, 294 F.3d 907, 914 (7th Cir. 2002) (petitioner must give the state's highest court an opportunity to address each claim) (internal citations omitted).

Jackson never presented the ineffective assistance of counsel claim set forth in his habeas petition to the Illinois Supreme Court. He raised ineffectiveness claims based on other issues,

---

[10] He also alleges that trial counsel was ineffective for not objecting to the State's use of peremptory challenges to exclude venirepersons who seemed weak on the death penalty. As stated in Part IV.A, *supra*, this claim is moot, since Jackson is no longer subject to the death penalty, and all but one of the improper exclusions he describes involved the original jury, not the resentencing jury. Furthermore, even if not moot, this claim is without merit. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 735 (7th Cir. 1998) (no Supreme Court precedent preventing state from using peremptory challenges to remove jurors who appeared to be opposed to death penalty); *Dennis v. Mitchell*, 354 F.3d 511, 525-26 (6th Cir. 2003) (same).

such as alleged errors in the mitigation and aggravation stage of his trial, but not based on the issues presented in his habeas petition. Thus, he has not given "the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court," *Rodriguez*, 193 F.3d at 916, *citing Picard v. Connor*, 404 U.S. 270, 275 (1971). As a result, this claim is procedurally defaulted, and this court should review the merits only if Jackson can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Anderson*, 227 F.3d at 899-90.

In his petition, Jackson's only attempt to explain the reason for the failure to present this claim in state court is the ineffectiveness of appellate counsel, stating that where appellate counsel's performance is objectively unreasonable and deficient, the failure to raise issues on appeal will constitute "cause and prejudice." *See Freeman v. Lane*, 962 F.2d 1252, 1259 (7th Cir. 1992). Jackson claims that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness.

In *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), the Supreme Court held that, where a petitioner raises an ineffectiveness of counsel claim as cause for excusing a procedural default, the claim asserted as cause may itself be procedurally defaulted. In the instant case, Jackson never presented his ineffective assistance of appellate counsel claim to the Illinois Supreme Court. According to *Edwards*, this court may only consider the ineffectiveness of appellate counsel claim if Jackson can establish cause and prejudice for the default. *See id.* at 453.

Jackson has not attempted to demonstrate cause and prejudice for the procedurally defaulted ineffective assistance of appellate counsel claim, which he now wishes to have this court consider both as a distinct claim and as a basis to review his procedurally defaulted

20

ineffective assistance of trial counsel claim. Normally, this court would not consider the merits of either Claim # 4 or # 5 because of the procedural defaults; nevertheless, since the State did not raise procedural default as a bar to a merits determination, this court will review both claims on their merits.

Claims of ineffective assistance of trial counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish an ineffective assistance of counsel claim, Jackson must prove two components: first, that counsel's performance was deficient, consisting of "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; second, that these errors prejudiced the defense, by being "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. If Jackson is unable to demonstrate both *Strickland* prongs, his ineffective assistance claim will not succeed. *Id.* Because the Illinois Supreme Court did not have an opportunity to review this claim, this court will "dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000).

Jackson's main argument is that, had trial counsel conducted discovery competently and thoroughly interviewed all of the trial witnesses, he would have been aware of the existence of a few damaging statements that were presented at trial. If counsel had been aware of these statements, he could have prepared the case differently and possibly avoided the situation of surprise at trial. This court notes that Jackson's counsel attempted to suppress Jackson's statements to the police and the state's attorney on Fifth Amendment grounds. His attorneys also diligently presented a voluntary intoxication defense, even though the Illinois Supreme Court indicated that the trial court should not have allowed this affirmative defense to be presented.

*See Jackson I*, 145 Ill.2d at 86. Finally, his attorneys promptly objected to each instance of allegedly improper behavior by the State. *See id.* at 66-76. Thus, this court cannot say that Jackson's counsel was necessarily deficient. Even assuming that Jackson has met the first *Strickland* prong, he has not shown how this allegedly deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687.

The main evidence tending to disprove Jackson's voluntary intoxication defense consisted of his own statements to the police and to an assistant state's attorney. He offered very detailed statements to the authorities, which the jury could have reasonably viewed as indicative of his state of mind on the night of the homicides. *See Jackson I*, 145 Ill.2d at 61-62. These statements likely caused the jury to find that Jackson and Driskel formed a plan to kill Mark Brown and take his money and possessions, and that the drugs they used did not impair their intent. Given that the other harmful evidence that was presented at trial was merely cumulative of statements from Jackson himself, this court is hard-pressed to find that Jackson was prejudiced by the additional evidence. Under *Strickland*, prejudice is found only when, there is a reasonable probability that, in the absence of counsel's errors, "the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

In this case, it is unlikely that, even if Jackson's attorneys conducted discovery differently, the end result of the proceedings would have differed. The jury would probably not have accepted Jackson's voluntary intoxication defense, given the state of the evidence against him. When reviewing the prosecutorial misconduct claims, the *Jackson I* court noted that Jackson's memory "appear[ed] to have gotten progressively worse as he attempted to build his intoxication defense." *See Jackson I*, 145 Ill.2d at 88. Given the presence of Jackson's own

22

thorough account of the night's events, there is no reasonable probability that the absence of

harmful statements by Dr. Ziporyn, Dr. O'Donnell or O.C. Roland would have affected the jury's

verdict. Thus, Jackson has not demonstrated prejudice as required to succeed with an ineffective

assistance of counsel claim, and the court denies habeas relief as to this claim. *See Strickland*,

466 U.S. at 687 ("counsel's errors [must have been] so serious as to deprive the defendant of a

fair trial, a trial whose result is reliable").

### C. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (Claim # 4)

As stated in Part IV.C, Jackson contends that he was denied effective assistance of

appellate counsel by appellate counsel's failure to raise trial counsel's ineffectiveness. This

claim does not prevail as "cause" to excuse the procedural default of Claim # 3, nor should it be

reviewed as a distinct claim on the merits, because Jackson did not give the Illinois Supreme

Court an opportunity to review the merits of this argument. Principles of comity and federalism

generally require that constitutional claims be first fairly presented in state court. *See Edwards*,

529 U.S. at 451; *Murray v. Carrier*, 477 U.S. 478, 489 (1986). Similar to Claim # 3, Jackson did

not present this claim to the Illinois Supreme Court in his appeal from the denial of post-

conviction relief. As such, he did not exhaust his state remedies with respect to this claim and it

is now procedurally defaulted. *See Boerckel*, 526 U.S. at 848.

This claim was raised in Jackson's petition for post-conviction relief submitted to the

Cook County Circuit Court; however, he did not pursue the issue in his appeal to the Illinois

Supreme Court. His habeas petition contains neither an explanation for the absence of this claim

from his appeal to the Illinois Supreme Court following the denial of post-conviction relief, nor

23

any mention of the cause and prejudice or fundamental miscarriage of justice exceptions as would normally be required for this court to review the merits of Claim # 4. However, because the State did not raise the procedural default issue with respect to this claim, this court will review the merits. As with Claim # 3, since the Illinois Supreme Court was not afforded with the opportunity to review the merits of Claim # 4, this court will "dispose of the matter as law and justice require." 28 U.S.C. § 2243.

*Strickland* also sets forth the proper standard for reviewing claims of ineffective assistance of appellate counsel. *See Williams*, 529 U.S. at 390-91. Under the first *Strickland* prong, appellate counsel's performance is deficient if counsel fails to appeal any issue that is both obvious and clearly stronger than the issues that were raised. *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001). To establish prejudice under the second *Strickland* prong, the petitioner must show that appellate counsels' failure to raise an issue might have resulted in the reversal of his conviction or an order for a new trial. *See id.* As with trial counsel, this court must indulge a strong presumption that appellate counsel was constitutionally effective. *See Strickland*, 466 U.S. at 688; *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996).

On direct appeal, Jackson's counsel raised a number of issues, including all of the instances of prosecutorial misconduct alleged in Claim # 2. The Illinois Supreme Court denied Jackson's requests for relief. *See Jackson I*, 145 Ill.2d at 54-55. It does not appear that appellate counsel raised a claim of trial counsel's ineffectiveness; however, Jackson has made no showing that this issue was "clearly stronger" than the other issues raised by appellate counsel. *See Winters*, 274 F.3d at 1167. There is no reason to believe that the *Jackson I* court would have found an ineffective assistance of trial counsel claim to be stronger than the prosecutorial

misconduct claims raised by appellate counsel, which were based on the same underlying events. Jackson has not demonstrated that his appellate counsel's performance was deficient. *See id.* (appellate counsel is not required to "raise every non-frivolous issue under the sun.") (internal citations omitted).

Accordingly, Jackson has not met the first prong of the test for ineffective assistance of appellate counsel, and this court need not consider whether he could demonstrate prejudice. Even if Jackson had shown deficient performance, no showing of prejudice has been made. This court found in Part IV. D, *supra,* that Jackson did not show ineffective assistance of trial counsel. Thus, there is no reasonable probability that, had appellate counsel raised a claim alleging trial counsel's ineffectiveness, Jackson's conviction would have been reversed. *See Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003). This court denies Jackson's request for habeas relief under Claim

# 4.

### D.    CUMULATIVE EFFECT (Claim # 5)

Jackson's final habeas claim is that, even if each alleged error standing alone did not amount to a denial of due process, they may cumulatively amount to a denial of due process. The State contends that, since none of Jackson's claims have merit, their "cumulative effect" does not require any habeas relief. *See Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996).

Individual trial errors which alone may be harmless may, in the aggregate, violate a defendant's right to due process of law. *See Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). To establish that the cumulative effect of the trial court's errors violated his due process rights, Jackson must demonstrate that at least two errors were committed and that, "when considered

25

together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *See id.* at 824 (internal citations omitted). Simply put, he must show that, but for the trial court's multiple errors, the trial's outcome would have been different. *See id.* at 825; *see also U.S. v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001).

Jackson has not clearly established that there was even one trial error. Without more, there are no ill effects to accumulate. *See Alvarez*, 225 F.3d at 825. In light of the proper evidence presented at Jackson's trial, even assuming that there were trial errors, Jackson has not demonstrated that "but for the errors, the outcome of the trial probably would have been different." *See id.* at 824. Therefore, the court denies Jackson's cumulative effects claim.

## V.    EVIDENTIARY HEARING

Jackson contends that an evidentiary hearing under 28 U.S.C. § 2254(e)(2) is warranted to further develop his claims. Federal habeas courts, however, are not an alternative forum for trying facts and issues that a habeas petitioner did not pursue in state court. *See Williams*, 529 U.S. at 437. Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court cannot hold an evidentiary hearing unless the petitioner can show:

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

26

28 U.S.C.§ 2254(e)(2).

Jackson does not argue that there is a new rule of constitutional law that was previously unavailable to him. Therefore, he must establish that the failure to develop the factual record in state court, if any lack of development exists, was not his fault. *See Williams*, 529 U.S. at 432. He has not explained how the factual record may be lacking in development, and thus, it appears that he does not meet the first prong of the stringent test set forth in 28 U.S.C. § 2254(e)(2).

Even if this court were to find that there is some sort of factual predicate that has not been developed, Jackson must meet the second prong of this statute. To do so, he would have to point to facts that are sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would find him guilty of the murders at issue. *See Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003). He has not met this standard Jackson, therefore, has failed to make the requisite showing for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). Therefore, the court denies his request.

## VI.    CONCLUSION

For the foregoing reasons, Jackson's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. Any pending motions are denied as moot. This case is terminated.


**IT IS SO ORDERED**:


Date: *February 26, 2004*          Enter _____

JOAN HUMPHREY LEFKOW
**United States District Judge**